IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANNY PALMER, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-2906 |
| | : | |
| PHA, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**ROBRENO, J.**                                                                              **AUGUST 17, 2021**

    Currently before the Court is Plaintiff Danny Palmer's *pro se* Amended Complaint against the Philadelphia Housing Authority ("PHA") and others based on his eviction. The Court will dismiss Palmer's Amended Complaint for the following reasons.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

    In his initial Complaint, Palmer alleged that he was unlawfully evicted from his housing, which was apparently owned or managed by PHA, for nonpayment of rent and for failure to sign a recertification relating to his lease. (ECF No. 2 at 1-2, 7, 10-11.)[1] Palmer described the allegations underlying the eviction lawsuit as "libel," "false," and "fabricated," and alleged he was evicted based on "rogue rulings" by "two unjust judges" because he had evidence showing he had paid his rent. (*Id.* at 1-2, 7, 9, 11-12.) Palmer sought "to sue PHA for the libel that has caused [his] current homelessness and the intentional infliction of emotional distress maliciously caused by their [malfeasance]." (*Id.* at 3; *see also id.* at 6 (describing the Complaint as raising a claim for "libel").)

---

[1] The Court adopts the pagination assigned by the CM/ECF docketing system.

1

In a July 23, 2021 Memorandum and Order, the Court granted Palmer leave to proceed *in forma pauperis* and dismissed his Complaint. (ECF Nos. 8 & 9.) The Court construed Palmer's Complaint against PHA as raising tort claims for libel, intentional infliction of emotional distress and abuse of process, but concluded that Palmer had not pled a basis for the Court's jurisdiction over those claims. (ECF No. 8 at 3.) Specifically, Palmer failed to allege that the parties were citizens of different states; rather, his allegations suggested they might both be Pennsylvania citizens. (*Id.* at 3.) The Court also explained that to the extent Palmer's Complaint could be construed as raising claims under 42 U.S.C. § 1983, the Court lacked jurisdiction if Palmer was challenging the state court's judgment evicting him and, for those claims over which jurisdiction existed, Palmer failed to allege a policy or custom of PHA that caused the violation of his constitutional rights. (*Id.* at 4 n.5.) Palmer was given leave to file an amended complaint in the event he could cure the defects in his pleading.

Palmer returned with an Amended Complaint naming as Defendants: (1) PHA; (2) Nadine Stevenson (who apparently served as counsel for PHA in the eviction case); (3) an unknown person who acted as Stevenson's supervisor on December 9, 2019; (4) that person's supervisor; (5) Karen Simmons, one of the judges who presided over Palmer's eviction proceeding; (6) Paula Patrick, another judge who presided over Palmer's eviction proceeding; and (7) Tiffany Fox Worthless, a PHA property manager. (ECF No. 12 at 1 & 5.) The allegations of the Amended Complaint are substantially similar to the allegations of the initial Complaint. Palmer alleges that he was wrongfully evicted based on falsehoods, "libel," and erroneous rulings by the judges who presided over his case.

As in his initial Complaint, Palmer contends he was improperly evicted for nonpayment of rent and failure to sign a recertification. (*Id.* at 3-4.) Palmer alleges that he did, in fact, pay

his rent and that he presented evidence to that effect in state court, which the judges assigned to his case failed to credit. (*Id.* at 10-11.) Palmer also alleges that his eviction based on failure to sign a recertification, which he had to sign as a "transfer tenant," was improper because he was "brow beat" into signing a new recertification as a "ruse." (*Id.* at 3-4.) The Court understands Palmer to be alleging that when he signed a new lease, he was misinformed by a PHA property manager that his recertification was due by May 31, 2020, rather than a date in March 2019 that was presumably calculated based on his old lease. (*Id.* at 10, 13.) Palmer alleges that he "made an unintentional mistake" with regard to the recertification based on the information he received from the property manager, and then "stood [his] ground for the 5-31-2020 recertification" consistent with what he had previously been told by refusing to comply or cooperate with the earlier recertification. (*Id.* at 13.) Palmer also alleges that he was harassed and discriminated against because "[t]hey [b]asically don't like me because I don't fit the [t]raditional [t]ypical description" of the type of male who usually lives in PHA housing. (*Id.* at 15.)

Palmer indicates that he is suing the Defendants for libel, intentional infliction of emotional distress, and possibly abuse of process. (*Id.* at 3.) The Court also understands Palmer be raising due process and equal protection claims pursuant to 42 U.S.C. § 1983 based on his eviction. (*Id.* at 5.) His claims against Judges Simmons and Patrick are based on their alleged "abuse of discretion" and "rogue rulings" in his eviction proceeding. (*Id.* at 3 & 11-12.) Palmer's claims against attorney Stevenson, and presumably two unknown supervisors, appear to be based on their prosecution of the eviction proceeding against him on behalf of PHA. (*See id.* at 5 & 12.) Palmer's claims against Worthless are based on Palmer's suspicion that Worthless stole money from him "if she kept that money from her employer," presumably referring to the rent money he claims to have paid, and that Worthless "falsified" unspecified documentation.

(*Id.* at 4-5.) PHA appears to have been sued based on the actions of its employees that led to Palmer's eviction. Palmer seeks punitive damages. (*Id.* at 3.)

## II. STANDARD OF REVIEW

As Palmer is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint in this case if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.* As Palmer is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). Additionally, the Court must dismiss the matter if it determines that the Complaint fails to set forth a proper basis for this Court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

## III. DISCUSSION

### A. Section 1983 Claims

The Court understands Palmer to be pursuing constitutional claims, pursuant to § 1983, for violation of his due process and equal protection rights in connection with his eviction. "To

state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To be liable, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). For the following reasons, Palmer may not proceed on his § 1983 claims.

1. ***Rooker-Feldman* Doctrine**

Palmer appears to be primarily alleging that he was deprived of due process and equal protection in connection with state court proceedings resulting in a judgment that was predicated on falsehoods and permitted his eviction from property owned or managed by PHA. Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Worthless Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). Based on that principle, the *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 166 (quotations omitted). "[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.*

At least some of Palmer's allegations could be understood to be claiming that he was injured by the state judges' allegedly erroneous rulings, which led to a state court judgment

5

authorizing his eviction, and seeking damages for injuries caused by that judgment. To that extent, the Court lacks jurisdiction to review Palmer's claims. *See Pittman v. Viamonte Invs. Grp., LLC*, No. 20-1107, 2021 WL 1169547, at *2 (7th Cir. Mar. 29, 2021) ("[T]here is no federal subject-matter jurisdiction over Pittman's claims for injuries caused by the state court judgment in the eviction proceedings. This covers the majority of his claims because it was the state court that caused his primary injury: the eviction and its collateral effects."); *cf. Wade v. Monroe Cty. Dist. Att'y*, 800 F. App'x 114, 119 (3d Cir. 2020) ("Wade's due process claim is based on the injury caused by this adverse state-court ruling, and it is exactly the type of claim a federal court cannot review."). However, the Court may exercise jurisdiction over the portion of Palmer's claims that do not essentially challenge the state court's judgment but rather, stem from the Defendants' related conduct. *See Vuyanich v. Smithton Borough*, No. 20-1813, 2021 WL 3161073, at *5 (3d Cir. July 27, 2021) (*Rooker-Feldman* does not apply when plaintiff's injuries "were caused by the Defendants, not the state court").

### 2. Due Process Claims

Palmer's due process claims are essentially predicated on allegations that the Defendants moved to evict him based on what he describes as falsehoods, *i.e.,* his nonpayment of rent and failure to comply with recertification requirements. As a PHA tenant, Palmer was entitled to due process prior to his eviction. *See Blaylock v. Philadelphia Hous. Auth.*, Civ. A. No. 02-8251, 2003 WL 22386997, at *2 (E.D. Pa. Sept. 25, 2003); *see also Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992) ("[E]viction of a public housing tenant without prior notice and an opportunity to be heard violates due process."). "Fundamentally, procedural due process requires notice and an opportunity to be heard" in a meaningful time and manner. *Mancini v. Northampton Cty.*, 836 F.3d 308, 315 (3d Cir. 2016) (citing *Mathews v. Eldridge*, 424

U.S. 319, 333 (1976)).  Here, Palmer's allegations make clear that he was given the opportunity to present his version of events in state court.[2]  Palmer alleges that he presented his evidence and version of events to the state court, but that the state court erroneously ruled in favor of his eviction despite his evidence.  Since Palmer had the opportunity to respond to the PHA's allegations by presenting his evidence and arguments in state court, he has not alleged a due process violation in connection with the eviction proceedings.  *See Thomas v. Philadelphia Hous. Auth.*, Civ. A. No. 94-2413, 1994 WL 735922, at *3 (E.D. Pa. Dec. 23, 1994) (finding no due process violation when plaintiff was notified of a possible adverse action, could attend and present evidence at an arbitration hearing, and "was permitted to appeal the arbitrator's conclusions in state court.").  Further, to the extent Palmer is raising a substantive due process claim, the conduct described in the Complaint is not "conscience-shocking" in a manner that would give rise to such a claim.  *See Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999).  In sum, the Amended Complaint does not allege a plausible due process violation.

### 3. Equal Protection Claims

Palmer also has not alleged a plausible equal protection violation.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  Plaintiffs pursuing an equal protection claim must allege that they were purposefully discriminated against, in that "they received different treatment from that received by other individuals *similarly situated*." *Shuman*

---

[2] Palmer neither discusses nor challenges any procedures that may or may not have been available to him prior to the state court proceedings, so any such procedures are not at issue.

7

*ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (emphasis in original). In one of his "exhibits" Palmer alleges that unspecified individuals "harassed" him and "discriminated" against him because he did not fit the traditional or typical description of the "kind of male" they were used to serving. (*Id.* at 15.) These generalized, conclusory allegations, which do not directly implicate the named Defendants, do not assert plausibly that the Defendants violated Palmer's equal protection rights by treating him differently than others who were similarly situated. *See Santos v. Sec'y of D.H.S.*, 532 F. App'x 29, 34 (3d Cir. 2013) (*per curiam*) (pleading was properly dismissed where "the amended complaint assert[ed] blanket, non-specific allegations that Santos was treated differently because of his race and/or gender" and did not include "specific allegations illustrating how Santos was treated differently than those similarly situated").

### 4. Additional Defects in Palmer's § 1983 Claims

There are additional reasons why Palmer's allegations fail to state a § 1983 claim apart from the reasons above. Palmer's claims against Judges Simmons and Patrick are barred by absolute judicial immunity because it is apparent that the claims against the judges are based on acts they took in their official capacities while presiding over Palmer's eviction proceeding. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (explaining that judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction). Palmer has not alleged a plausible § 1983 claim against PHA because he has not alleged that a policy or custom of PHA violated his constitutional rights. *See Solomon v. Philadelphia Hous. Auth.*, 143 F. App'x 447, 456 (3d Cir. 2005) (holding that PHA, although a Commonwealth entity, falls is within the definition of "person" as a local government entity for purposes of § 1983 liability

(citing *Wright v. Philadelphia Hous. Auth.*, 1994 WL 597716, *3 (E.D. Pa. 1994)); *see also Lee v. Petrolichio*, 697 F. App'x 112, 113 n.5 (3d Cir. 2017) (*per curiam*) (a plaintiff must allege a governmental policy or custom to state a claim against PHA). Finally, Palmer's allegations against Worthless that, *if* she kept Palmer's money, she stole from him, appear to be based entirely on speculation, and his allegation that Worthless fabricated unspecified documents is too conclusory and undeveloped to state a claim.

**B. State Claims**

The Court understands Palmer to again raise tort claims against PHA under Pennsylvania law for libel, intentional infliction of emotional distress and abuse of process, based on his eviction from property owned or managed by PHA. However, 28 U.S.C. § 1332(a) provides the only independent basis for this Court's jurisdiction over such claims. That provision grants a district court jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[3] An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).

The Complaint does not allege the citizenship of the parties, although it appears likely that both Palmer and several, if not all, of the Defendants are Pennsylvania citizens.[4] Additionally, it is again not clear whether the amount in controversy is satisfied here. Accordingly, the Court cannot exercise jurisdiction over Palmer's tort claims.

---

[3] Having dismissed Palmer's federal claims, the Court will not exercise supplemental jurisdiction over his state claims.

[4] Palmer does not allege the State of which he is a citizen and only provides a post office box address in Philadelphia.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Palmer's Amended Complaint. Since Palmer has already been given an opportunity to amend his pleading and was unable to cure the defects in his claims, the Court concludes that further attempts at amendment would be futile. However, the Court notes that the dismissal of Palmer's state law claims is without prejudice to Palmer refiling those claims in state court, where federal jurisdiction will not be an issue. An appropriate Order follows.